UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SAINT REGIS MOHAWK TRIBE,

                          Plaintiff,

vs.                                                    8:24-cv-01479 (AMN/PJE)

UNITED STATES OF AMERICA; ROBERT F.
KENNEDY, JR., in his official capacity as
Secretary, U.S. Department of Health and Human
Services; and BENJAMIN SMITH, in his official
capacity as Acting Director, Indian Health Service,

                          Defendants.

---

**APPEARANCES:**                                       **OF COUNSEL:**

**HOBBS, STRAUS, DEAN & WALKER, LLP**                  **JENNIFER P. HUGHES, ESQ.**
7 Woodlawn Place
Clinton, New York 13323

215 SW Washington Street – Suite 200                   **GEOFFREY D. STROMMER, ESQ.**
Portland, Oregon 97204                                 **CALEB J. NORRIS, ESQ.**
*Attorneys for Plaintiff*                              **STEPHEN D. OSBORNE, ESQ.**

**UNITED STATES ATTORNEY FOR THE**                     **EMER M. STACK, ESQ.**
**NORTHERN DISTRICT OF NEW YORK**                      Assistant United States Attorney
100 South Clinton St. – Suite 9000
Syracuse, New York 13261
*Attorneys for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

On December 5, 2024, the Saint Regis Mohawk Tribe ("Plaintiff") commenced this action

against the United States, the Secretary of Health and Human Services ("HHS") in his official

capacity, and the Director of the Indian Health Service ("IHS") in her official capacity

1

("Defendants").[1]  Dkt. No. 1 ("Complaint").  Plaintiff seeks declaratory, mandamus, and injunctive relief compelling Defendants to execute Plaintiff's proposed amendment to a funding agreement under the Indian Self-Determination and Education Assistance Act, which would allow Plaintiff to assume from IHS the responsibility for operation and maintenance of sanitation facilities.  *See id.*  Presently before the Court are Plaintiff's motion, Dkt. No. 25, and Defendants' cross-motion, Dkt. No. 29, for summary judgment pursuant to Federal Rule of Civil Procedure 56.  *See also* Dkt. Nos. 24, 26, 30, 31, 32.  The Court heard oral argument on the motions on February 26, 2026.  For the following reasons, the Court grants Plaintiff's motion and denies Defendants' motion.

II.    **BACKGROUND**

A.  **Relevant Statutes**

1.  **Indian Self-Determination and Education Assistance Act**

In 1975, Congress enacted the Indian Self-Determination and Education Assistance Act ("ISDEAA").  Pub. L. No. 93-638, 88 Stat. 2203 (1975) (codified as amended at 25 U.S.C. §§ 5301-99).  The ISDEAA aims to promote Indian self-determination and assist the development of strong and stable tribal governments by giving tribes more control over federal programs and services benefiting Indians.  *See* 25 U.S.C. § 5302(b).

To that end, Title V of the ISDEAA requires the Secretary of HHS to establish and administer the "Tribal Self-Governance Program" within and through IHS, which is an agency within HHS.  25 U.S.C. § 5382.  Under this program, participating tribes negotiate and enter into written compacts with the United States via the Secretary to assume direct responsibility for administering programs, functions, services, and activities ("PFSAs" or "programs") that the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the current Secretary of HHS, Robert F. Kennedy, Jr., and the current Acting Director of IHS, Benjamin Smith, have been substituted for their predecessors Xavier Becerra and Rosalyn Tso, respectively.

Secretary would otherwise administer to American Indians and Alaska Natives under federal law. *See* 25 U.S.C. §§ 5321(a)(1), 5384, 5385.  As part of these compacts, tribes also negotiate and enter into funding agreements with the Secretary.  25 U.S.C. § 5385(a).  These funding agreements may include:

> all programs, services, functions, activities (or portions thereof), including grants (which may be added to a funding agreement after an award of such grants), with respect to which Indian tribes or Indians are primary or significant beneficiaries, administered by the Department of Health and Human Services through the Indian Health Service and all local, field, service unit, area, regional, and central headquarters or national office functions so administered under the authority of—
>
> (A) section 13 of this title [the Snyder Act];
>
> (B) the Act of April 16, 1934 (48 Stat. 596; chapter 147; 25 U.S.C. 452 et seq.) [now codified at 25 U.S.C. § 1632];
>
> (C) the Act of August 5, 1954 (68 Stat. 674; chapter 658) [the Transfer Act];
>
> (D) the Indian Health Care Improvement Act (25 U.S.C. 1601 et seq.);
>
> (E) the Indian Alcohol and Substance Abuse Prevention and Treatment Act of 1986 (25 U.S.C. 2401 et seq.);
>
> (F) any other Act of Congress authorizing any agency of the Department of Health and Human Services to administer, carry out, or provide financial assistance to such a program, service, function or activity (or portions thereof) described in this section that is carried out for the benefit of Indians because of their status as Indians; or
>
> (G) any other Act of Congress authorizing such a program, service, function, or activity (or portions thereof) carried out for the benefit of Indians under which appropriations are made available to any agency other than an agency within the Department of Health and Human Services, in any case in which the Secretary administers that program, service, function, or activity (or portion thereof).

25 U.S.C. § 5385(b)(2).

Should compact or funding agreement negotiations result in a stalemate between the parties, under Title V the tribe may submit a final offer to the Secretary.  25 U.S.C. § 5387(b).  The

Secretary then has 45 days (or longer by agreement with the tribe) to review and either accept or reject the offer in whole or in part. *Id.* But the Secretary may only reject the final offer in conjunction with:

> a timely written notification to the Indian tribe that contains a specific finding that clearly demonstrates, or that is supported by a controlling legal authority, that—
>
>> (i) the amount of funds proposed in the final offer exceeds the applicable funding level to which the Indian tribe is entitled under this subchapter;
>>
>> (ii) the program, function, service, or activity (or portion thereof) that is the subject of the final offer is an inherent Federal function that cannot legally be delegated to an Indian tribe;
>>
>> (iii) the Indian tribe cannot carry out the program, function, service, or activity (or portion thereof) in a manner that would not result in significant danger or risk to the public health; or
>>
>> (iv) the Indian tribe is not eligible to participate in self-governance under section 5383 of this title[.]

25 U.S.C. § 5387(c)(1)(A)(i)-(iv). The Secretary must also provide the tribe with technical assistance to overcome IHS's stated objections, the option to enter into the severable portions of the proposed compact or funding agreement that the Secretary did not reject, as well as a hearing on the record with the right to discovery and an opportunity for appeal. 25 U.S.C. § 5387(c)(1)(B)-(D). In lieu of an administrative appeal, the tribe may instead file an action in federal district court pursuant to Section 5331 of the same title, pursuant to which this Court has original jurisdiction. 25 U.S.C. § 5387(c)(1)(C).

### 2. Sanitation Facilities Statutes

Also relevant to this matter are statutes that specifically address IHS's provision of sanitation facilities and services to tribes.

First, as background, in 1921, Congress passed the Snyder Act, which was the first statutory authorization for Indian health care programs. Pub. L. No. 67-85, 42 Stat. 208 (1921) (codified at

25 U.S.C. § 13).  In 1954, through the Transfer Act, Congress transferred responsibility for Indian health care programs from the Bureau of Indian Affairs to the Surgeon General of the Public Health Service within HHS.  Pub. L. No. 83-568, § 1, 68 Stat. 674 (1954) (codified at 42 U.S.C. § 2001).  One year later, HHS established IHS.  Dkt. No. 25-1 at 11 n.3.[2]

In 1959, Congress passed the Sanitation Facilities Construction Act ("SFCA"), which amended the Transfer Act to include provisions specific to sanitation facilities.  In relevant part, the SFCA provides that the Surgeon General, and thus IHS, is authorized

> (1) to construct, improve, extend, or otherwise provide and maintain, by contract or otherwise, essential sanitation facilities, including domestic and community water supplies and facilities, drainage facilities, and sewage- and waste-disposal facilities, together with necessary appurtenances and fixtures, for Indian homes, communities, and lands;
>
> . . .
>
> (3) to make such arrangements and agreements with appropriate public authorities and nonprofit organizations or agencies and with the Indians to be served by such sanitation facilities (and any other person so served) regarding contributions toward the construction, improvement, extension and provision thereof, and responsibilities for maintenance thereof, as in his judgment are equitable and will best assure the future maintenance of facilities in an effective and operating condition; and
>
> (4) to transfer any facilities provided under this section, together with appurtenant interests in land, with or without a money consideration, and under such terms and conditions as in his judgment are appropriate, having regard to the contributions made and the maintenance responsibilities undertaken, and the special health needs of the Indians concerned, to any State or Territory or subdivision or public authority thereof, or to any Indian tribe, group, band, or community or, in the case of domestic appurtenances and fixtures, to any one or more of the occupants of the Indian home served thereby.

42 U.C.S. § 2004a(a)(1), (3)-(4).

---

[2] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system.

In 1976, Congress further clarified the authority granted by the SFCA in the Indian Health Care Improvement Act ("IHCIA").  Pub. L. No. 94-437, 90 Stat. 1400 (1976) (codified at 25 U.S.C. §§ 1601-85).  Section 1632(b)(2) of the IHCIA states, in relevant part, that when IHS provides sanitation facilities and services under the SFCA, it is authorized to provide

> (A) financial and technical assistance to Indian tribes and communities in the establishment, training, and equipping of utility organizations to operate and maintain Indian sanitation facilities;
>
> (B) ongoing technical assistance and training in the management of utility organizations which operate and maintain sanitation facilities; and
>
> (C) operation and maintenance assistance for, and emergency repairs to, tribal sanitation facilities when necessary to avoid a health hazard or to protect the Federal investment in sanitation facilities.

25 U.S.C. § 1632(b)(2)(A)-(C).  Additionally, Section 1638e of the IHCIA authorizes the Secretary to "accept" and "use funds, equipment, and supplies to plan, design,, [sic] construct, and operate health care or sanitation facilities for Indians, including pursuant to a contract or compact" under the ISDEAA.  25 U.S.C. § 1638e(a)(2)(A)-(B).

### B.  Factual Background

The Saint Regis Mohawk Tribe is a federally recognized Indian tribe located on the Saint Regis Mohawk Reservation in Franklin and St. Lawrence Counties in New York.  Dkt. No. 31 at ¶ 1.  In 2010, Plaintiff entered into a compact ("Compact") under Title V of the ISDEAA with IHS to assume certain PFSAs, and in 2021, entered into a multi-year funding agreement for the Compact effective for calendar years 2021-2024 ("Funding Agreement").  *Id.* at ¶¶ 2-3.

On December 8, 2023, Plaintiff submitted a proposed amendment to the Funding Agreement ("Proposed Amendment") to IHS, which included, among other things, a new sanitation facilities program (the "Sanitation Facilities Program").  Dkt. No. 29-3 at ¶ 3; *see also*

Dkt. No. 26 at 111-12.[3]  Under the proposed Sanitation Facilities Program, Plaintiff would, among other things, plan, design, and construct new sanitation facilities, and also "operate and maintain the sanitation facilities to effectively treat sewage, manage wastewater, dispose of solid waste, and provide clean water."  Dkt. No. 31 at ¶ 26; *see also* Dkt. No. 26 at 111-12.

IHS responded with comments and counter-edits on February 16, 2024, including a proposal to strike the language related to the Sanitation Facilities Program because, in its view, "the plain language of the IHCIA does not create a water/sewer operation and maintenance PFSA that may be included in an ISDEAA contract."  Dkt. No. 31 at ¶¶ 28-29.  Plaintiff responded on February 21, 2024, disagreeing with IHS's interpretation and stating that it could "assume responsibility for the operation and maintenance of sanitation facilities" pursuant to the ISDEAA and the IHCIA.  Dkt. No. 31 at ¶ 30.  After further negotiation, Plaintiff and IHS reached an agreement on certain proposals, but not on "the proposals to add operation and maintenance of sanitation facilities as a PFSA, or the individual sanitation facilities as facilities or locations where PFSAs are provided."  Dkt. No. 31 at ¶¶ 33, 35 (quoting Dkt. No. 26 at 122).  In an email dated May 9, 2024, IHS reiterated its position that IHS "is not authorized" to perform PFSAs constituting the operation and maintenance of sanitation facilities.  Dkt. No. 29-3 at ¶ 7.

On June 17, 2024, Plaintiff submitted a final offer ("Final Offer") to IHS regarding its Proposed Amendment, which continued to include the Sanitation Facilities Program.  Dkt. No. 29-3 at ¶ 8; Dkt. No. 31 at ¶ 40.  During its review of the Final Offer, IHS continued to communicate

---

[3]  Specifically, Plaintiff proposed incorporating "Sewage Treatment" and "Wastewater Management" into its current environmental health program, Section 4(b)(8), and a new section creating a sanitation facilities program, Section 4(b)(20). Dkt. No. 26 at 26-27. With this proposed language, Plaintiff intended to create one program for the operation and maintenance of sanitation facilities.  *See* Dkt. No. 26 at 136 ("The Tribe . . . shared . . . that the proposed edits to the Environmental Health [PFSA] is tied to the request to add operation and maintenance of sanitation facilities as a [PFSA] and should be interpreted as such.").

with Plaintiff, offering technical assistance and sharing relevant information to avoid rejection pursuant to 42 C.F.R. § 137.144.  Dkt. No. 31 at ¶ 41.  Plaintiff extended the deadline to respond from August 1 to August 8, 2024, but did not withdraw the Final Offer.  Dkt. No. 31 at ¶¶ 45, 47; Dkt. No. 26 at 145.

On August 8, 2024, IHS partially rejected Plaintiff's Final Offer.  Dkt. No. 31 at ¶ 48.[4]  As relevant here, IHS rejected the proposed Sanitation Facilities Program and maintained its position that IHS is not authorized to perform routine operation and maintenance of sanitation facilities and thus the Sanitation Facilities Program could not be included in the Funding Agreement.  *See* Dkt. No. 31 at ¶ 50.  In the alternative, IHS also partially rejected the Final Offer under certain of the criteria provided in Section 5387(c)—"namely, that the amount of funds proposed in the final offer exceeded the applicable funding level to which the Tribe was entitled under Title V, and that the PFSA that is the subject of the final offer is an inherent Federal function that cannot legally be delegated to an Indian tribe."  Dkt. No. 31 at ¶ 51 (citing Dkt. No. 26 at 16-18).

Pursuant to 25 U.S.C. §§ 5387(c)(1)(C), 5331(a), and 5391(a), and 28 U.S.C. § 2201, Plaintiff now asks the Court to (1) declare that IHS is authorized to administer programs for the operation and maintenance of sanitation facilities, thereby subjecting such programs to inclusion in a funding agreement for a Title V compact; (2) reverse Defendants' rejection of Plaintiff's Final Offer; and (3) compel Defendants to approve the Final Offer and execute and enter into the full Proposed Amendment to the Funding Agreement.  *See* Dkt. No. 1 at ¶ 65; Dkt. No. 25-1 at 10; Dkt. No. 31 at ¶ 53.

---

[4] IHS accepted and made effective the portions of the Proposed Amendment not involving the Sanitation Facilities Program—Sections 4(b)(3), 4(b)(4), and 4(d)(11)-(12)—as of the date of the partial rejection letter.  Dkt. No. 26 at 1.

### III.    STANDARD OF REVIEW

Summary judgment is properly granted only if, upon reviewing the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993).

As to questions of law under the ISDEAA, the court applies a *de novo* standard of review. *See, e.g.*, *Jamestown S'Klallam Tribe v. Azar*, 486 F. Supp. 3d 83, 87 (D.D.C. 2020); *Seminole Tribe of Fla. v. Azar,* 376 F. Supp. 3d 100, 108 (D.D.C. 2019); *Maniilaq Ass'n v. Burwell*, 170 F. Supp. 3d 243, 247 (D.D.C. 2016) ("*Maniilaq II*").[5]  When conducting such review, the Court employs the Indian law canon of statutory construction codified in Title V of the ISDEAA: "Each provision of this title and each provision of a compact or funding agreement shall be liberally construed for the benefit of the Indian tribe participating in self-governance and any ambiguity shall be resolved in favor of the Indian tribe."  25 U.S.C. § 5392(f); *see also* 25 C.F.R. § 900.3(b)(11); *Chickasaw Nation v. United States*, 534 U.S. 84, 93-94 (2001) ("'statutes are to be construed liberally in favor of the Indians with ambiguous provisions interpreted to their benefit'") (quoting *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985)).  In some circumstances where there is countervailing evidence of congressional intent, this canon "need not be conclusive," *see Jamestown S'Klallam*, 486 F. Supp. 3d at 88 (quoting *Chickasaw Nation*, 534 U.S. at 94), but at least one circuit court has found that where the canon has been incorporated into

---

[5] While there is some question as to whether courts should review an IHS rejection under the Administrative Procedure Act ("APA"), district courts have held that the ISDEAA requires *de novo* review.  *See, e.g.*, *Fort McDermitt Paiute & Shoshone Tribe v. Price*, No. 17-cv-837, 2018 WL 4637009, at *1 (D.D.C. Sept. 27, 2018) ("*Fort McDermitt I*").  Here, Plaintiff does not bring an APA claim and neither party disputes that *de novo* review applies.  *See* Dkt. No. 25-1 at 21; Dkt. No. 29-1 at 24.

the binding language of a compact, the court "merely must conclude that the language is ambiguous to read it as the Tribe does." *San Carlos Apache Tribe v. Becerra*, 53 F.4th 1236, 1240-41 (9th Cir. 2022).

Additionally, the ISDEAA provides that the agency must "interpret all Federal laws, Executive orders, and regulations in a manner that will facilitate--(1) the inclusion of programs, services, functions, and activities (or portions thereof) and funds associated therewith, in the agreements entered into under this section; (2) the implementation of compacts and funding agreements entered into under this subchapter; and (3) the achievement of tribal health goals and objectives." 25 U.S.C. § 5392(a).  Thus, "Congress intended the ISDEAA to be implemented in a manner favoring flexibility in funding agreements." *Maniilaq Ass'n v. Burwell*, 72 F. Supp. 3d 227, 233 (D.D.C. 2014) ("*Maniilaq I*").  As such, with respect to a final offer pursuant to the ISDEAA, the agency bears "the burden of demonstrating by clear and convincing evidence the validity of the grounds for rejecting the offer[.]"  25 U.S.C. § 5387(d).

## IV.   DISCUSSION

### A.  Statutory Authorization to Operate and Maintain Sanitation Facilities

The primary question before the Court is whether either of the relevant statutes to which Title V of the ISDEAA refers, namely the SCFA and the IHCIA, grants IHS the authority to operate and maintain sanitation facilities.  If IHS has such authority, a tribe may properly include a program to operate and maintain sanitation facilities in a Title V compact and funding agreement.  If the plain language of the relevant statutes clearly grants or denies IHS the authority to operate and maintain sanitation facilities, the Court's inquiry ends there.  *See Cherokee Nation of Oklahoma v. United States*, 73 Fed. Cl. 467, 476 (2006); *see also Susanville Indian Rancheria v. Leavitt*, No. 07-259, 2008 WL 58951, at \*7 (E.D. Cal. Jan. 3, 2008) ("Our first step in interpreting a statute is

10

to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.  Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'") (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340-41 (1997)).  If, however, the statutes support more than one plausible reading, the Court's inquiry continues.

Plaintiff principally argues that IHS has the authority to operate and maintain sanitation facilities pursuant to the plain language of both the SFCA and IHCIA.  *See* Dkt. No. 25-1 at 23-26. As to the SFCA, Plaintiff notes that the relevant text of the statute authorizes the Secretary, through IHS, to "construct, improve, extend, or otherwise provide and maintain, by contract or otherwise, essential sanitation facilities."  *Id.* at 24 (quoting 42 U.S.C. § 2004a(a)(1)).  Plaintiff argues that this language provides IHS with the option to contract out the provision and  maintenance of such facilities or to retain the responsibility for doing so.  *Id*.  As to the IHCIA, Plaintiff points to language in Section 1632(b)(2), which authorizes the Secretary to provide "operation and maintenance assistance for, and emergency repairs to, tribal sanitation facilities when necessary to avoid a health hazard or to protect the Federal investment in sanitation facilities," *id*. at 24-25 (quoting 25 U.S.C. § 1632(b)(2)(C)), as well as language in Section 1638e, which expressly authorizes the Secretary to use funds, equipment, and supplies available to IHS to operate sanitation facilities, *id*. at 25 (citing 25 U.S.C. § 1638e(a)(2)(B) ("The Secretary may accept from any source . . . funds, equipment, or supplies that are available for the construction or operation of health care or sanitation facilities; and use those funds, equipment, and supplies to plan, design,, [sic] construct, and operate health care or sanitation facilities for Indians, including pursuant to a contract or compact under the Indian Self-Determination and Education Assistance Act[.]")).

Plaintiff also argues that the IHCIA generally grants the Secretary broad authority and discretion to "provide health promotion and disease prevention services" to achieve the statute's Indian "health status objectives."  Dkt. No. 25-1 at 25 (citing 25 U.S.C. § 1621b).  According to Plaintiff, such services reasonably include "the routine operation and maintenance of sanitation facilities, which would further the agency's goals of making safe water and sanitation facilities available to Indian communities."  *Id.*; *see also* 25 U.S.C. § 1602(b) (declaration of national Indian health policy); 25 U.S.C. § 1603(11)(D), (G)(vii), (xx), (xxv) (definitions of "health promotion").

In response, Defendants argue that standard canons of construction require an opposite reading of the relevant statutes: that IHS is not authorized to perform routine operation and maintenance of sanitation facilities.  *See* Dkt. No. 29-1 at 25-35.  As to the SFCA, Defendants argue that one can only understand the statute's meaning regarding the maintenance of sanitation facilities by reading subsections (1) and (3) of Section 2004a together.  *Id*. at 27.  As to subsection (1), Defendants apply the *noscitur a sociis* canon of construction—"a word is known by the company it keeps"—and argue that because the word "maintain" is part of the phrase "and otherwise provide and maintain," which refers to the preceding authority to "construct, improve, extend," then "maintain" must be understood in the context of that list.  Dkt. No. 29-1 at 29.  Thus, Defendants contend that subsection (1) only authorizes IHS "to provide new or to maintain sanitation facilities *through* construction, improvements, or extensions."  *Id.* (emphasis in original); *see also* 42 U.S.C. § 2004a(a)(1).  As to subsection (3), Defendants contend that its plain language, read together with subsection (1), creates an inference that "the Tribe to be served by a constructed or improved sanitation facility will, in turn, assume responsibility for the maintenance of it."  Dkt. No. 29-1 at 27; *see also* 42 U.S.C. § 2004a(a)(3).

12

As to the IHCIA, Defendants argue that the full text of Section 1632(b)(2) only provides IHS authority in limited circumstances—namely, providing assistance to tribes in operating and maintaining sanitation facilities "in emergency situations." Dkt. No. 29-1 at 31-32. Moreover, Defendants assert that Section 1638e only authorizes IHS to fund sanitation facilities, not operate them. *See id.* at 11. Defendants further argue that the overall "statutory context" of the SFCA and IHCIA, as well as related Congressional appropriations, further support a reading that limits IHS's authority to constructing sanitation facilities before transferring them to tribes for routine operation and maintenance. Dkt. No. 29-1 at 7-9, 29-33.

Following *de novo* review, the Court holds that IHS has the authority to operate and maintain sanitation facilities. The Court finds that the plain language of the SFCA and IHCIA is determinative of the scope of IHS's authority. *See Tudor v. Whitehall Cent. Sch. Dist.*, 132 F.4th 242, 246 (2d Cir. 2025) ("'When interpreting a statutory provision, we start with the text.'") (quoting *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 546 (2d Cir. 2024)).

As an initial matter, this conclusion is supported by the fact that the SFCA and IHCIA grant IHS *permissive*, rather than mandatory, authority to contract out the provision and maintenance of sanitation facilities and transfer such facilities to tribes or other entities. For example, the SFCA states that IHS "is authorized" to make arrangements and agreements with various parties—including public authorities, nonprofits, as well as Indian tribes and individuals—regarding maintenance responsibilities for sanitation facilities. 42 U.S.C. § 2004a(a)(3). Similarly, the SFCA states that IHS "is authorized" to transfer sanitation facilities to an appropriate party. 42 U.S.C. § 2004a(a)(4). And relatedly, the IHCIA invokes the authority provided in the SFCA and further provides that IHS "is authorized" to assist tribes with establishing, equipping, and training utility organizations that operate and maintain sanitation facilities. 24 U.S.C. § 1632(a)(2)(A)-(B).

13

In contrast, Defendants argue that the text of the SFCA "assigns IHS the task of making an agreement with *the Tribe* to ensure *the Tribe's responsibility* for the maintenance of the sanitation facility going forward," which suggests that IHS must make agreements to relieve itself of the responsibility to operate and maintain sanitation facilities post-construction.  Dkt. No. 29-1 at 27 (citing 42 U.S.C. § 2004a(a)(3)).  Similarly, Defendants argue that while the SFCA authorizes IHS to transfer title of a completed sanitation facility to a tribe, it does not explicitly authorize IHS to retain title after construction or improvements have been completed.  *Id.* at 27-28 (citing 42 U.S.C. § 2004a(a)(2), (4)).  And as to the IHCIA, Defendants interpret it to mean that "Congress authorized IHS to provide support services that will enable Indian *tribes*," and only tribes, to operate and maintain sanitation facilities.  *Id.* at 32 (emphasis in original).

Defendants' narrow reading of the SFCA and the IHCIA disregards the permissive nature of the statutory language.  The SFCA does not direct that IHS "shall" make such arrangements, agreements, or transfers, and the IHCIA does not direct that IHS "shall" assist tribes in establishing utility organizations.  *Cf. Maine Cmty. Health Options v. United States*, 590 U.S. 296, 310 (2020) ("The first sign that the statute imposed an obligation is its mandatory language: 'shall.'").  Thus, while it may be good policy and common practice to arrange for Indian tribes and individuals to assume operation and maintenance responsibilities for sanitation facilities after construction, neither statute categorically mandates it.  The absence of a mandate to contract or transfer indicates that IHS may also determine to do neither of those things, in which case IHS retains responsibility for the operation and maintenance of the sanitation facilities.[6]  Thus, while the Court acknowledges

---

[6] The only other possibility is that, absent a contract or transfer, responsibility for operation and maintenance of the sanitation facilities would be unassigned.  Such an outcome would be absurd and runs contrary to the declared policy of the IHCIA to "ensure the highest possible health status for Indians."  *See* 25 U.S.C. § 1602(1).

the federal government's historical preference to transfer facilities post-construction or contract for essential services, it finds that the SFCA and the IHCIA authorize IHS to operate and maintain sanitation facilities where it deems it appropriate to further the aims of the statute.

In addition, the Court finds that the remaining language in the relevant statutory provisions affirmatively grants IHS the authority to operate and maintain sanitation facilities.  As to Section 2004a(a)(1) of the SCFA,  the Court finds that, consistent with Plaintiff's interpretation, the phrase "or otherwise provide and maintain" is part of a list of discrete, authorized actions and thus authorizes IHS to maintain sanitation facilities.  *See* Dkt. No. 25-1 at 24; 42 U.S.C. § 2004a(a)(1).  The Court is not persuaded by Defendants' argument that it should apply *noscitur a sociis* to find that the phrase "construct, improve, extend" cabins the meaning of "provide and maintain" through the adverbial phrase "or otherwise."  Dkt. No. 29-1 at 28-29.  *Noscitur a sociis* typically applies where a list of terms contains an ambiguous word that "is capable of many meanings." *McDonnell v. United States*, 579 U.S. 550, 569 (2016); *cf. Fischer v. United States*, 603 U.S. 480, 509 (2024) (Barrett, J., dissenting) (*noscitur a sociis* is typically used to select among multiple accepted meanings, not to modify terms via adverbial phrases).  And, on a natural reading, "maintain" in this context does not present such ambiguity in relation to sanitation facilities.  *See Maintain*, *Black's Law Dictionary* (12th ed. 2024) (stating that, in the context of property, "maintain" means either "to continue in possession of" or "to care for (property) for purposes of operational productivity or appearance; engage in general repair and upkeep").

Moreover, Section 2004a(a)(3) of the SCFA authorizes the Secretary "to make such arrangements and agreements . . . regarding contributions toward the construction, improvement, extension, and provision [of sanitation facilities], and responsibilities for maintenance thereof[.]" 25 U.S.C. § 2004a(a)(3).  Here, subsection (3) clearly groups "construction, improvement,

extension, and provision" separately from "maintenance," thereby indicating that "maintain" is to be understood on its own.  Bearing in mind Defendants' own argument that "subsections (1) and (3) of [Section] 2004a(a) must be read together, in their context[,]" Dkt. No. 29-1 at 27, the Court finds that *noscitur a sociis* is inapplicable to "maintain".  Thus, the SFCA authorizes IHS to maintain sanitation facilities based on its plain meaning.

Next, the IHCIA also provides IHS with affirmative authority to operate and maintain sanitation facilities.  Specifically, Section 1632(b)(2)(C) provides that IHS is authorized to operate and maintain such facilities under a flexible set of circumstances.  *See* 25 U.S.C. § 1632(b)(2)(C). Contrary to Defendants' claim that Congress intended to limit IHS assistance under this section to situations in which "emergency repairs" are necessary, the plain language of the statute distinguishes "emergency repairs" from "operation and maintenance assistance" by using the conjunctive "and," thereby articulating two distinct types of services that IHS is authorized to provide: operation and maintenance assistance *and* emergency repairs.  *See id.*; *see also* Dkt. 30 at 15; *New York v. Dep't of Justice*, 951 F.3d 84, 104 (2d Cir. 2020) (stating that conjunctive structure of statute served to expand the statute's requirements).  Furthermore, the text of the statute indicates that IHS may provide these services in two circumstances: "when necessary to avoid a health hazard" or "to protect the Federal investment in sanitation facilities."  25 U.S.C. § 1632(b)(2)(C).  Thus, in either of these circumstances, IHS may provide operation and maintenance assistance and/or emergency repairs.

This reading of the SFCA and the IHCIA is further supported by Section 1638e of the IHCIA, which authorizes the Secretary to "use [accepted] funds, equipment, and supplies to . . . operate . . . sanitation facilities for Indians, including pursuant to a contract or compact" under the ISDEAA.  *See* 25 U.S.C. § 1638e(a)(2)(A)-(B).  In expressly authorizing the Secretary

of HHS to accept and use "funds, equipment, and supplies" from other sources to operate sanitation facilities pursuant to a Title V compact, this provision indicates that IHS has the authority to operate such facilities in the first place. Even if neither the SFCA nor the IHCIA affirmatively authorize IHS to operate and maintain sanitation facilities, "it has long been held that whenever a power is given by a statute, everything necessary to making it effectual or requisite to attaining the end is implied." Antonin Scalia & Bryan A. Garner, Reading Law 192-93 (2012). Thus, to give full effect to Section 1638e, it cannot be that IHS only acquires the authority to plan, design, construct, and operate health care and sanitation facilities *if* it accepts funds from other federal or state agencies. The section as written does not articulate a set of conditions for new powers, but rather articulates HHS's authority to accept funds, equipment, and supplies from other agencies, then use them *to execute powers it already possesses*.

In this section, the IHCIA also specifically differentiates "operate" from "construct," situating both among lists of distinct applicable uses to which the Secretary may apply the relevant "funds, equipment, and supplies." *See* 25 U.S.C. § 1638e(a)(2)(A) (authorizing the Secretary to accept "funds, equipment, and supplies" available for the "construction *or* operation" of sanitation facilities) (emphasis added); 25 U.S.C. § 1638e(a)(2)(B) (authorizing the Secretary to "use those funds, equipment, and supplies to plan, design,, [sic] construct, *and* operate" sanitation facilities) (emphasis added). Here, the meaning of "operate" is not even arguably cabined by any other qualifying word or list of words. Thus, the Court need not look to any other context to discern its scope.

Defendants assert that Section 1638e only "authorizes IHS to provide financial assistance to Tribes for tribal operation and maintenance of sanitation facilities." Dkt. 29-1 at 11. Such a reading, however, is belied by the plain language of the statute. First, Section 1638e(2)(B) states

17

that the agency may "use [accepted] funds, equipment, and supplies to . . . operate  . . . sanitation facilities."  Defendants' interpretation reads the language authorizing the agency to use funds "to operate" sanitation facilities out of the statute.  It also glosses over the terms "equipment" and "supplies" in the phrase "funds, equipment, and supplies."  It is the Court's duty "to give effect, if possible[,] to every clause and word of a statute[.]"  *United States v. Davis*, 961 F.3d 181, 188 (2d Cir. 2020) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)) (internal quotation marks omitted).  The Court "must therefore try to 'avoid statutory interpretations that render provisions superfluous[.]'"  *Id.* (quoting *State St. Bank & Tr. Co. v. Salovaara*, 326 F.3d 130, 139 (2d. Cir. 2003)).  Ignoring "to operate," as well as "equipment" and "supplies," in favor of "funding" inappropriately treats the former terms as surplusage and distorts the plain meaning of the statutory provision.

Defendants also more generally, and somewhat flippantly, protest that a reading of the relevant statutes that authorizes IHS to operate and maintain sanitation facilities would absurdly result in the federal government acting as "an on-call plumber for clogged water and sewage lines connected to a family home."  Dkt. No. 29-1 at 28; *see also* Dkt. No. 32 at 4 (arguing that such a reading would "obligate the federal government to maintain Indian homeowners' toilets and indoor plumbing").  This argument is a red herring.  It is true that "sanitation facilities" include a wide swath of facilities and services, ranging from community-wide water supply and sewer treatment plants to domestic appurtenances within individual homes.  *See* 42 U.S.C. § 2004a(a)(1); 25 U.S.C. § 1638e(d); *see also* H.R. Rep. No. 94-1026, at 102, *reprinted in* 1976 U.S.C.C.A.N. 2652, 2740.  However, the statutes do not mandate that IHS serve as an "on-call plumber" to Indian residences all across the nation.  Simply put, given their permissive grant of authority to contract or transfer, the statutes vest IHS with the discretion to determine when it will retain the responsibility of

18

operating and maintaining any particular sanitation facilities.  This discretion thus prevents the absurd results that Defendants argue would arise.

Lastly, Defendants argue that the Court should consider Congress's explicit authorization for IHS to "provide ongoing maintenance of dumps under the Indian Lands Open Dump Cleanup Act" (the "Dump Act") as evidence that Congress knows how to authorize routine operation and maintenance programs and chose not to do so for sanitation facilities.  Dkt. No. 29-1 at 33-34; *see* 25 U.S.C. § 3904.  The Court agrees that the Dump Act authorizes IHS to provide ongoing maintenance for dumps, but finds that this undercuts Defendants' argument because the text of the Dump Act is quite similar to the text of the IHCIA.  *Compare* 25 U.S.C. § 3904(b)(1)-(2) ("[T]he Director shall . . . provide financial and technical assistance to the Indian tribal government . . . to carry out the activities necessary to (1) close such dumps; and (2) provide for postclosure maintenance of such dumps.") *with* 25 U.S.C. § 1632(b)(2)(C) ("The Secretary, acting through the Service, is authorized to provide under section 2004a of Title 42—operation and maintenance assistance for . . . tribal sanitation facilities when necessary to avoid a health hazard or to protect the Federal investment in sanitation facilities.").  Here, Defendants admit that the Dump Act authorizes IHS *itself* to provide for postclosure maintenance. Dkt. No. 29-1 at 34.  Thus, contrary to Defendants' argument, this interpretation lends support to the conclusion that the similar language in the IHCIA should be interpreted to authorize IHS to operate and maintain sanitation facilities.

In sum, because the Court finds that the plain language of the SFCA and IHCIA authorizes IHS to operate and maintain sanitation facilities, Plaintiff properly sought to include the Sanitation Facilities Program in their Proposed Amendment to the Funding Agreement.

### B. Ambiguity in the Statutes

Because the Court holds that the SFCA and the IHCIA are unambiguous regarding the scope of IHS's authority as to sanitation facilities, further analysis is unnecessary. But even if the Court were to find that the statutes are ambiguous, it would still find in Plaintiff's favor.

In addition to making arguments concerning the relevant statutory language, Defendants argue that legislative history subsequent to the passage of the SFCA supports their interpretation of the statutes. *See* Dkt. No. 29-1 at 29-31.[7] Namely, Defendants argue that because Congress has appropriated SFCA funds through bills that provide only for the *construction* of Indian Health Facilities, that is the extent of IHS's authority. *Id.* The Court finds Defendants' argument unpersuasive.

Congressional appropriations that "emphasize[ ] that IHS's role is to construct sanitation facilities before turning them over to tribes for operation[,]" Dkt. No. 29-1 at 30, are not authoritative as to the full meaning or scope of either the SFCA or IHCIA. *See, e.g.*, *Bormann v. AT & T Comms., Inc.*, 875 F.2d 399, 402 (2d Cir. 1989) (finding that recent congressional appropriations bills were "not an authoritative interpretation" of federal statute's meaning when it was enacted). Thus, while Congress may not have allocated specific funding for IHS to operate and maintain tribal sanitation facilities, that choice is not necessarily coterminous with any statute's grant of authority to IHS, and by itself does not prove or create a lack of such authority. *See Maine Cmty. Health Options,* 590 U.S. at 312 (stating that "Congress can create obligations" for an agency "without contemporaneous funding sources"); *see also Auburn Hous. Auth. v.*

---

[7] A court only considers authoritative legislative history—assuming such history exists—"where there is an open question as to the meaning of a word or phrase in a statute, or where a statute is silent on an issue of fundamental importance to its correct application." *United States v. Gayle*, 342 F.3d 89, 93-94 (2d Cir. 2003).

*Martinez*, 277 F.3d 138, 144-45 (2d Cir. 2002) (collecting cases stating that Congress may amend or repeal a statute via appropriations bill, but such an implication is disfavored absent clear communication of its intent to do so).   In fact, Defendants' cited authority only offers Congressional policy guidance rather than any interpretive guidance as to the meaning or scope of the statutes: "IHS *should* continue its practice of turning these [sanitation] facilities over to the tribes for operation and maintenance upon completion of construction."  *See* Dkt. No. 29-1 at 30 (quoting H.R. Rep. No. 103-158, at 107 (1993) (emphasis added)).  Therefore, the Court finds that the legislative history cited by Defendants does not show that IHS lacks the authority to operate and maintain sanitation facilities.

Moreover, as to any ambiguity in the text of the statutes, for the reasons articulated above, Defendants' arguments fail to account for obstacles in the text that weigh against their reading of the statutes.  Given that Plaintiff has put forth a reasonable reading of the text, and in keeping with its obligation to construe ambiguous statutes integrated under the ISDEAA "liberally in favor" of the tribe, *see Chickasaw*, 534 U.S. at 93-94; *see also* 25 U.S.C. § 5392(f), the Court finds that any ambiguity should be resolved in favor of finding that IHS is authorized to operate and maintain sanitation facilities.  *See, e.g.*, *Maniilaq II*, 170 F. Supp. 3d at 254-55 (granting summary judgment in favor of tribe where relevant statute and regulations governing the amount of compensation due under 25 U.S.C. § 5324(l) ("Section 105(*l*)") leases was ambiguous); *see also Navajo Health Found.—Sage Mem'l Hosp., Inc. v. Burwell*, 256 F. Supp. 3d 1186, 1226, 1232 (D. N.M. 2015) (granting summary judgment after applying Indian law canon of construction where statute was ambiguous).

## C. Defendants' Partial Rejection of Plaintiff's Final Offer

The Court next considers whether IHS has demonstrated by clear and convincing evidence that it has properly rejected Plaintiff's Final Offer pursuant to Section 5837(c). The ISDEAA sets out four grounds on which IHS may reject a final offer, and IHS must invoke one or more of those grounds when it rejects an offer. 25 U.S.C. § 5387(c)(1)(A)(i)-(iv). Here, Defendants argue that IHS properly rejected Plaintiff's Proposed Amendment to the Funding Agreement under the first and second criteria set forth in the ISDEAA, namely that the Proposed Amendment (i) "exceeds the applicable funding level to which the Indian tribe is entitled," and (ii) implicates "an inherent Federal function that cannot legally be delegated to an Indian tribe." Dkt. No. 29-1 at 35-36 (citing 25 U.S.C. § 5387(c)(1)(A)(i-ii)).

As to the first criterion, Defendants argue that by using the words "construction project" in its Proposed Amendment, Plaintiff proposes to add its previously allocated funds for construction "project" activities to the Funding Agreement, which is limited to funding for construction "programs." Dkt. No. 29-1 at 36. Defendants also argue that the functional benefits of adding a PFSA to a funding agreement, "such as the ability to redesign programs, access to Federal Tort Claims Act coverage, entering into ISDEAA Section 105(*l*) leases, and others[,]" count toward calculating whether a funding agreement exceeds the applicable funding level to which the Tribe is entitled. *Id.*; *see also id.* at 37 (explaining that Section 105(*l*) requires IHS to lease compact program facilities upon request by a tribe). During oral argument, Defendants also cited Federal employee health benefits as a relevant future benefit. Finally, Defendants argue that the Proposed Amendment's retroactive effective date of June 12, 2024 also "could entitle the Tribe to funding" in excess of its entitlement. *Id.* at 38-39. In opposition, Plaintiff asserts that the Proposed Amendment does not request any additional funding for the Sanitation Facilities Program, and that

22

speculation as to future funding requests does not satisfy the rejection criteria.  Dkt. No. 25-1 at 27-28; *see also* Dkt. No. 26 at 26-28.[8]

On the face of the Proposed Amendment, Plaintiff does not request federal funding for the Sanitation Facilities Program, and Defendants appear to acknowledge as much in their rejection letter.  *See* Dkt. No. 26 at 17 ("The Tribe's final offer suggests an expectation of additional funding"); *id.* ("[e]ven if the Tribe does not currently explicitly seek specific amounts of additional IHS funding via either Secretarial amount funds or contract support costs, it may seek to do so in the future.").  Defendants also do not provide any evidence or legal authority indicating whether or how Plaintiff's proposed language regarding construction projects would result in an actual "amount of funds" beyond the level to which Plaintiff is entitled.  *See* 25 U.S.C. § 5387(c)(1)(A)(i) (stipulating that rejection of a final offer is proper when IHS presents a specific finding that the "amount of funds proposed in the final offer" exceeds amount to which the tribe is entitled).  While it is true, as Defendants argue, that construction "projects" for sanitation facilities are currently funded under a separate statutory agreement and Plaintiff has already received its full allocation for construction "programs," *see* Dkt. No. 26 at 95-97, 105-109*,* creating a new sanitation facilities "program" through a Title V compact does not by itself constitute a request for additional funds.[9]

---

[8] During oral argument, Plaintiff asserted that it plans to use third party revenues from already-existing PFSAs to fund the Sanitation Facilities Program.  The inclusion of the Sanitation Facilities Program in the Funding Agreement would facilitate the redesignation of funds from existing programs to the Sanitation Facilities Program.  Third party revenues are not considered as part of the amount of funds requested in a funding agreement.  *Fort McDermitt Paiute & Shoshone Tribe v. Becerra*, 6 F.4th 6, 14 (D.C. Cir. 2021) (explaining that the ISDEAA explicitly treats third party revenues such as Medicare or Medicaid income as "supplemental funding to that negotiated in the [Title V] funding agreement") (citing 25 U.S.C. § 5388(j)) ("*Fort McDermitt II*").

[9] To the extent that Plaintiff imprecisely used the term "construction project" in the Proposed Amendment, the Court understands that term to refer to construction within the Sanitation Facilities Program, and thus the use of that term does not implicate funds acquired via any separate construction project agreements.  *See* Dkt. No. 26 at 26-27; 25 U.S.C. §§ 5304(a), (m), 5381(a)(1)-(2) (differentiating between Title V construction programs and construction projects).

23

Furthermore, in *Fort McDermitt I*, the court noted that while it was unusual for a tribe to propose including a new program in their funding agreement that the government had previously never run, never funded, and would not fund going forward, the IHS could not reject it on the ground that the proposal exceeded the amount to which the tribe was entitled, given that the tribe did not propose any funding for the program.  2018 WL 4637009, at *4.  The *Fort McDermitt I* court specifically noted that "[p]otential tort liability—a risk of future expenditures that may or may not come to pass—is not a particular 'amount of funds.'"  *Id.*  Therefore, it found FTCA liability irrelevant to the question of funding that is now before the Court.  *Id.*  The Court agrees.  Additionally, considering that Plaintiff has not requested a Section 105(*l*) lease as part of the Funding Agreement, such leases are also "future expenditures that may or may not come to pass," and Defendants' argument for rejection fails on that ground as well.  *See* 25 U.S.C. § 5324(l); *cf. Maniilaq I*, 72 F. Supp. 3d at 238-39 (holding that tribes may incorporate a Section 105(*l*) lease in an ISDEAA funding agreement).  Finally, the Court also finds that the ability to redesign programs within a Title V compact and the provision of Federal employee health benefits are speculative future expenditures that do not satisfy the rejection criteria.

As the holding in *Fort McDermitt I* suggests, the structure of the ISDEAA is such that a tribe seeking to include a program under a Title V compact may, and in some cases must, do so without requesting any accompanying funds.  *See* 2018 WL 4637009, at *4.  Indeed, under an ISDEAA compact, tribes are entitled to the funding amount IHS "would have otherwise provided for the operation of the programs or portions thereof for the period covered by the contract."  *Salt River Pima-Maricopa Indian Cmty. v. Kennedy*, No. 18-cv-02360, 2025 WL 2377968, at *1 (D.D.C. Aug. 14, 2025) (citing 25 U.S.C. § 5325(a)(1)).  Additionally, IHS must also provide for "contract support costs," which are "'reasonable costs' borne by the tribe that would not be

24

incurred if the federal government directly operated the program," *see id.* (citing 25 U.S.C. § 5325(a)(2)(A)), and costs associated with support activities provided by "resources other than those under contract," 25 U.S.C. § 5325(a)(2)(B).   However, "[n]otwithstanding any other provision in [the ISDEAA], the provision of funds [pursuant to the ISDEAA] . . . is subject to the availability of appropriations[.]" 25 U.S.C. § 5325(b).  Therefore, where, as here, there have been no appropriations for a program, the maximum amount a tribe could negotiate to fund that program would be zero dollars.  And where, as here, the tribe accordingly does not request any funding as part of their final offer to include an unappropriated program in an ISDEAA funding agreement, it cannot be said that the amount of funds proposed in the final offer exceeds the applicable funding level to which the Tribe is entitled.

For these reasons, Defendants' argument concerning the effect of the retroactive date also fails.   Because Plaintiff does not request any additional funding as part of the Proposed Amendment, the date on which it goes into effect does not affect the amount of funds received by Plaintiff and thus does not entitle the Tribe to funding in excess of its entitlement.

Finally, as to the second criterion, Defendants' argument fails under the plain language of the standard for rejection: that "the program, function, service, or activity (or portion thereof) *that is the subject of the final offer* is an inherent Federal function that cannot legally be delegated to an Indian tribe[.]" 25 U.S.C. § 5387(c)(1)(A)(ii) (emphasis added).  In their rejection letter and in their briefing, Defendants do not argue that Plaintiff is seeking to assume the inherently federal function of operation and maintenance of sanitation facilities—nor could they, as this argument would be contrary to their primary argument that IHS is *not* authorized to operate or maintain sanitation facilities.  Instead, Defendants argue that Plaintiff is seeking to "assume the federal function of determining what programs fall under the statutory authority of the IHS."  Dkt. No.

25

29-1 at 37-38; *see also* Dkt. No. 26 at 18 (partially rejecting the proposed funding agreement in part because "the Tribe seeks to create a new program authorization for the IHS to administer, which is an inherent Federal function that cannot be delegated"). That argument is improper under the statute, which requires Defendants to provide evidence that the Sanitation Facilities Program included in the Final Offer is an inherently federal function. *See also* 25 U.S.C. § 5381(a)(4) ("The term 'inherent Federal functions' means those Federal functions which cannot legally be delegated to Indian tribes.").

In sum, Defendants have failed to carry their burden to show by clear and convincing evidence that IHS properly rejected Plaintiff's Final Offer.

\* \* \*

For all of the above reasons, the Court grants Plaintiff's motion for summary judgment and denies Defendants' cross-motion for the same.

### D. Remedy

With the merits decided, the Court turns to determining an appropriate remedy. Under the ISDEAA, this Court "may order appropriate relief including money damages, injunctive relief . . . or mandamus to compel an officer or employee of the United States, or any agency thereof, to perform a duty provided under this chapter or regulations promulgated hereunder[.]" 25 U.S.C. § 5331(a). Plaintiff asks the Court to compel IHS to accept the Final Offer and execute the Proposed Amendment to the Funding Agreement, including an effective date of June 12, 2024. Dkt. No. 25-1 at 29-30.[10]

---

[10] Because the ISDEAA specifically provides for injunctive and mandamus relief, Plaintiff need not demonstrate that the equities weigh in its favor to gain the relief it seeks. *Pyramid Lake Paiute Tribe v. Burwell*, 70 F. Supp. 3d 534, 545 (D.D.C. 2014); *see also Susanville*, 2008 WL 58951, at *10-11 (holding that plaintiff seeking equitable injunction under the ISDEAA need not satisfy the traditional requirements of equitable relief).

26

Considering the record and its conclusions above, the Court finds that injunctive relief requiring IHS to accept Plaintiff's Final Offer and amend the Funding Agreement accordingly is the appropriate remedy.  The Court has rejected, as a matter of law, Defendants' justifications for partially rejecting Plaintiff's Proposed Amendment to the Funding Agreement.  Also, because the parties have already engaged in lengthy and unfruitful negotiations, *see* Dkt. No. 26 at 1-30, 111-54, the Court finds that further negotiations would serve little purpose, especially because the gravamen of the parties' dispute concerns statutory authority, which the Court has decided, and not a specific amount of funding.  The Court therefore orders IHS to accept Plaintiff's Final Offer.

As to the effective date, the ISDEAA provides that "[t]he effective date of a compact shall be the date of the approval and execution by the Indian tribe or another date agreed upon by the parties[.]"  25 U.S.C. § 5384(d).  Because the Proposed Amendment to the Funding Agreement would have been effective in full on August 8, 2024 had IHS not partially rejected it, the Court deems those portions of the Proposed Amendment that IHS rejected—namely Sections 4(b)(8), 4(b)(20)(a)-(e), and 4(d)(13)-(19)—effective as of August 8, 2024.  *See* Dkt. No. 26 at 1, 16.

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's motion for summary judgment, Dkt. No. 25, is **GRANTED**; and the Court further

**ORDERS** that Defendants' cross-motion for summary judgment, Dkt. No. 29, is **DENIED**; and the Court further

**ORDERS** that Defendants accept Plaintiff's Final Offer regarding its Proposed Amendment to the Funding Agreement; and the Court further

**ORDERS** that the Clerk enter judgment in favor of Plaintiff in accordance with this order; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 31, 2026
Albany, New York

Anne M. Nardacci
U.S. District Judge

28